**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                  )
NUEVOS DESTINOS, LLC, *et al.*,   )
                                  )
          Plaintiffs,             )
                                  )
     v.                           )     Case No. 15-cv-1846 (EGS)
                                  )
SAMUEL PECK, *et al.*,            )
                                  )
          Defendants.             )
_____)

**<u>MEMORANDUM OPINION</u>**

**I. Introduction**

This action arises out of an alleged racketeering scheme
spanning about eight years whereby defendants—twenty-two
companies and individuals—purportedly used otherwise legitimate
business entities to defraud plaintiffs by making false promises
to sell agricultural goods. Plaintiffs sue defendants for: (1)
violation of 18 U.S.C. § 1962(c)("RICO"); (2) violation of 18
U.S.C. § 1962(d) (conspiracy to violate RICO); (3) conspiracy to
commit fraud; (4) fraud; and (5) breach of contracts. Pending
before the Court are several motions: (1) nine defendants' eight
motions to dismiss; (2) one defendant's motion to strike certain
declarations; (3) plaintiffs' two motions to allow alternate
service for seven defendants; (4) plaintiffs' motion for
jurisdictional discovery.

The Court has carefully considered the pending motions, the opposition memoranda, the replies thereto, the entire record herein, and the applicable law. The Court concludes that it lacks personal jurisdiction over the nine defendants and therefore **GRANTS** the eight pending motions to dismiss. The Court also concludes that jurisdictional discovery is not warranted and **DENIES** plaintiffs' motion for jurisdictional discovery. Because the Court lacks jurisdiction over the relevant defendants, it **DENIES AS MOOT** plaintiffs' motions for service and the motion to strike plaintiffs' declarations.

## II. Background

The Court credits the complaint, which it must at this stage of the proceedings. This matter arises out of an alleged racketeering scheme, largely organized by two defendants, to defraud plaintiffs by making false promises to provide agricultural goods sold to and bought by plaintiffs. *See generally* Compl., ECF No. 1. The Court first describes the parties and then elaborates on the purported scheme. Because most of the defendants have not entered an appearance in the case, the Court focuses its discussion on the nine defendants with pending motions to dismiss.

### A. The Parties

Plaintiffs are two corporate entities and one individual. First, Nuevos Destinos, LLC ("NDL") is a company registered in

Florida with its principal place of business in the District of Columbia (at the time of the injury) and Virginia (presently). *Id.* ¶ 9. It purchases agricultural products from Peru "for export from Peru and delivery to the United States and other countries." *Id.* Plaintiff Nuevos Destinos Peru, S.A.C. ("NDP") is a company organized in Peru with its principal place of business in the District of Columbia (at the time of the injury) and Virginia (presently). *Id.* ¶ 10. It is the Peruvian "affiliate" of NDL and "serves as the purchasing agent" for NDL in Peru. *Id.* Finally, plaintiff William P. Cook ("Mr. Cook") is a United States citizen who lives in the Commonwealth of Virginia. *Id.* ¶ 11. He and his wife are the principals of NDL, *id.* ¶ 9, and he "personally financed all of the agricultural transactions by which plaintiffs were defrauded," *id.* ¶ 11.

Defendants include one United States citizen, one United States corporation, and seven Peruvian citizens and corporations. The "central mastermind" of the scheme is Ignacio Harten Rodriguez Larrain ("Ignacio"). *Id.* ¶ 13. He is a Peruvian citizen who, "upon information and belief," presently lives in the United States. He was the General Manager of Agricola Peruana Del Sol, S.R.L. ("APS"), a Peruvian company that processed and exported agricultural products from Peru to other countries, including the United States. *Id.* ¶¶ 13, 15. Neither Ignacio, nor APS has entered an appearance in the case. The

other central figure, according to plaintiffs, is defendant
Samuel Peck ("Mr. Peck"), who was a founder and majority
shareholder of APS. *Id.* ¶ 12. Mr. Peck is a United States
citizen residing in Colorado. *Id.* During the relevant time, Mr.
Peck was also the Vice President and chief buyer for defendant
SKE Midwestern ("SKE"), a United States corporation registered
and located in North Dakota. *Id.* ¶¶ 12, 17. SKE is a "beans
broker, supplier, importer, processor and shipper" with over
twenty years' experience in international markets, including
Peru. *Id.* ¶ 17. Defendant Emilio Farah ("Mr. Farah") is a
citizen of Peru and an alleged principal of two other defendant
Peruvian corporations, Convalor, S.A.C. ("Convalor") and
Confactor, S.A.C. ("Confactor"). *Id.* ¶ 16. Mr. Farah sought to
buy, process, and sell agricultural products with NDL and
introduced plaintiffs to Ignacio. *Id.*

Defendant Jorge Harten Costa, Sr. ("Jorge, Sr.") is
Ignacio's father and is also a Peruvian citizen. *Id.* ¶ 20. He
was a designated agent of APS. *Id.* Defendant Jorge Emilio Harten
Rodriguez Larrain, Jr. ("Jorge, Jr.") is also a Peruvian citizen
and Ignacio's brother (and Jorge, Sr.'s son). *Id.* ¶ 21. He was
also a designated agent of APS. *Id.* Defendant Ofelia Maria
Rodriguez Larrain Salinas de Harten ("Ofelia") is also a
Peruvian citizen. *Id.* ¶ 22. She is Jorge, Sr.'s wife and
Ignacio's mother. *Id.* Ofelia also became the "nominal public

head of" Peruvian Organic International Trading, S.A.C. ("POIT"), another defendant Peruvian company that became the "successor in interest" to APS. *Id.* POIT has been "continu[ing] the fraudulent schemes of APS and [Ignacio]." *Id.* ¶ 23. POIT has not entered an appearance in the case. Finally, defendant Javier Rodriguez Larrain Salinas ("Javier") is a Peruvian citizen and Ignacio's uncle (Ofelia's brother). *Id.* ¶ 24. When discussing these four defendants collectively, the Court will refer to Jorge, Sr.; Jorge, Jr.; Ofelia; and Javier as the "Harten family."[1]

## B. The Scheme

According to plaintiffs, the racketeering organization essentially functioned as a Ponzi scheme, *id.* ¶ 96, whereby individual defendants—including the Harten family, Mr. Peck, SKE, Convalor, Confactor, and Mr. Farah—would "vouch" for Ignacio and APS, posing as uninterested parties, *see id.* ¶¶ 12-30. In reality, these individual defendants had been defrauded by Ignacio and APS and were seeking to recoup their losses by recruiting new investors to defraud. *See id.* The new investors' funds would not be used to purchase agricultural products, as

---

[1] As mentioned, the Court omitted details about the defendants who have not entered an appearance in the case unless such information was necessary for context.

the investors intended and Ignacio and APS promised, but would rather be used to pay off the debts. *See id.*

In 2007, Ignacio and Mr. Peck, on behalf of SKE, created APS, which sold agricultural products internationally. *Id.* ¶ 67. At some point, SKE and Mr. Peck purchased significant amounts of products from APS. APS began "defaulting" on its promises to provide SKE with its agricultural products. *Id.* ¶ 70, *see id.* ¶¶ 71-74. By 2011, APS owed SKE $3.6 million. *Id.* ¶ 74. Accordingly, SKE's President told Mr. Peck that "his job was on the line" and he had to do "whatever it took to get the Company's money back from APS and [Ignacio]." *Id.* ¶ 74. At that point, Mr. Peck and Ignacio devised a scheme "whereby [Mr.] Peck would issue facially valid purchase orders on behalf of SKE and then [Ignacio] would shop them around to financing sources in Lima and abroad." *Id.* ¶ 76. Mr. Peck and Ignacio then sold the purchasing orders to investors, including the Harten family and Mr. Farah. *Id.* ¶¶ 79-82. By 2012, Mr. Peck and Ignacio owed the other defendants millions of dollars. *See id.* According to plaintiffs, these defendants sought to recover their lost investments by vouching for Ignacio and APS with the aim to recruit new investors. *See id.* ¶ 96.

While this scheme was ongoing, NDL was looking to expand its business beyond financing exporting companies in Peru. In 2012, it sought to buy products directly from Peruvian

agricultural producers to sell and export. *Id.* ¶ 31. In April 2012, Mr. Farah introduced plaintiffs to Ignacio in Peru. *Id.* ¶¶ 32, 103 (meeting in Bujama, Peru). Mr. Farah said that Ignacio was "one of the largest exporters of bean products in Peru" and was "honest [and] well-connected." *Id.* ¶ 31. In May 2012, plaintiffs met Mr. Peck at a lunch organized by Ignacio in Peru. *Id.* ¶ 88. In an effort to retain plaintiffs' business, Mr. Peck told plaintiffs that "he had worked for a long time with [Ignacio]" and that he was "very pleased with the relationship." *Id.* He also emphasized that APS was a "top exporter" and confirmed that the purchase order NDL was considering financing was "for real," and that SKE had "committed to purchase" the products at issue. *Id.* ¶ 89. Mr. Peck did not disclose the debt that APS owed SKE, nor did he mention his ownership stake in APS. *Id.* ¶ 91. A month later, plaintiffs also met with Jorge, Sr. in Peru. *Id.* ¶ 106. Jorge, Sr. also recommended his son's company and did not disclose APS' debts. *Id.* In August 2012, Ignacio and his wife traveled to the District of Columbia to meet with plaintiffs in person. *Id.* ¶ 33.

On those recommendations and references, NDL began transacting with APS in May 2012. *Id.* ¶¶ 36, 100-102 (stressing the importance of the recommendations to plaintiffs' decision to work with Ignacio and APS). NDL entered into several contracts with APS for various agricultural products. Ultimately, it

provided over $1.5 million for about 1,500 metric tons of products. *Id.* ¶¶ 36, 37. Ultimately, APS only delivered about 64 of the 1,500 tons of products. *Id.* The amounts "disbursed by NDL to APS for [agricultural] products . . . were solely for the benefit of NDL or its customers; or for customers for whom [Ignacio] led NDL to believe APS had specific purchaser orders, including SKE (which NDL later found out to be largely false)." *Id.* ¶ 37. Despite its many efforts, plaintiffs have been unable to "get a full and complete accounting of where its money went." *Id.* ¶ 128. Plaintiffs have also been unsuccessful in recovering the money that they allege they are owed. *See, e.g.*, *id.* ¶ 145 (alleging to have received $48,540 of the $1.7 million owed).

After plaintiffs uncovered the defendants' scheme, the Harten family created POIT, the company that succeeded APS, in 2014. *Id.* ¶ 144. According to plaintiffs, defendants have continued the same racketeering activity through POIT. *See id.* ¶¶ 83-84, 136-141.

## III. Analysis

In their eight pending motions to dismiss, the nine defendants challenge the complaint on several grounds. *See* Defs.' Mots. to Dismiss ("Defs.' Mots."), ECF Nos. 35, 36, 37, 38, 45, 50, 52, 54. All nine defendants argue that the Court lacks personal jurisdiction over them pursuant to Federal Rule of Civil Procedure 12(b)(2). *See id.* Five of the defendants

challenge the plaintiffs' choice of forum pursuant to Federal Rule of Civil Procedure 12(b)(3) and the *forum non conveniens* doctrine. *See* Defs.' Mots., ECF Nos. 45, 50, 52, 54. Seven of the defendants also argue that they were improperly served pursuant to Federal Rule of Civil Procedure 12(b)(5). *See* Defs.' Mots., ECF Nos. 35, 36, 37, 38, 50, 52. Finally, five of the defendants argue that plaintiffs failed to state a RICO claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Defs.' Mots., ECF Nos. 45, 50, 52, 54. Because the Court agrees that it lacks personal jurisdiction over all nine defendants, it need not reach their other arguments. *See Galvan v. Fed. Prison Indus., Inc.*, 199 F.3d 461, 463 (D.C. Cir. 1999)("Jurisdiction must be established before a federal court may proceed to any other question.")(citing *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94–95 (1998)).

**A. The Court Lacks Personal Jurisdiction Over the Defendants**

The nine defendants submit similar arguments in their eight motions to dismiss. *See* Defs.' Mots., ECF Nos. 35, 36, 37, 38, 45, 50, 52, 54. Essentially, the defendants argue—and the Court agrees—that this case is a Peruvian dispute about activities that occurred in Peru and injuries that were caused in Peru. *See, e.g.*, Def.'s Mot., ECF No. 54-1 at 1-2 ("The complaint . . . describes an ordinary business dispute between two Peruvian companies . . . . [t]he conduct described in the complaint takes

place almost entirely in Peru"). First, because none of the defendants reside here, all argue that the Court lacks general jurisdiction as they are not essentially "at home" in the District of Columbia (American defendants) or in the United States (Peruvian defendants). *See* Defs.' Mots., ECF Nos. 35, 36, 37, 38, 45, 50, 52, 54. The Peruvian defendants, including the Harten family, Confactor, Convalor, and Mr. Farah, also argue that the Court cannot establish jurisdiction over them by way of the RICO statute because it only provides for nationwide service of process on domestic defendants. Defs.' Mots., ECF Nos. 35, 36, 37, 38, 50, 52. The American defendants, SKE and Mr. Peck, also argue that the Court cannot acquire jurisdiction over them via the RICO statute because the Court does not have jurisdiction over at least one of the defendants in the enterprise, as it must. *See* Defs.' Mots., ECF Nos. 45, 54. Finally, all of the defendants contend that the purportedly unlawful conduct occurred in Peru, and thus, the Court cannot acquire specific jurisdiction over them pursuant to the District of Columbia's long arm statute or Federal Rule of Civil Procedure 4(k)(2) because there is no "substantial connection" between the defendants and the forum. *See* Defs.' Mots., ECF Nos. 35, 36, 37, 38, 45, 50, 52, 54. As such, the defendants conclude that exercising jurisdiction would violate due process. *See id.*

Much of plaintiffs' briefing regarding personal jurisdiction focuses on each defendant's role in the RICO scheme and is therefore largely irrelevant to the Court's jurisdictional analysis. Pls.' Opp'n, ECF No. 64 at 8-43.[2] That said, plaintiffs respond that personal jurisdiction lies in this Court pursuant to Federal Rule of Civil Procedure 4(k)(2), known as the "federal long arm statute." *Id.* at 9-15. Plaintiffs contend that jurisdiction is proper because "each of the defendants herein, had more than fair warning that the activities of APS and POIT would subject them to the jurisdiction of the U.S" because all the defendants had "personal knowledge" of the purported "business plan": to defraud "U.S.-based customers." *Id.* at 12.[3] Moreover, plaintiffs argue that the defendants purposefully directed their activities at the forum by soliciting plaintiffs, citizens of the forum at the time, and encouraging investment in APS. *See id.* at 13-14.

"Under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing a factual basis for personal jurisdiction." *Canuto v. Mattis*, No. 16-2282, 2018

---

[2] When citing electronic filings throughout this Opinion, the Court cites to the ECF page number, not the page number of the filed document.

[3] "The Court may consider the jurisdictional allegations raised in [the plaintiffs'] opposition." *McIntosh v. Gilley*, 753 F. Supp. 2d 46, 58 (D.D.C. 2010)(citation omitted).

WL 3213318, at *4 (D.D.C. June 30, 2018)(citing *Okolie v. Future Servs. Gen. Trading & Contracting Co., W.L.L.*, 102 F. Supp. 3d 172, 175 (D.D.C. 2015); *Crane v. N. Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990)). To meet that burden, the plaintiff "'must allege specific acts connecting [the] defendant with the forum.'" *Okolie*, 102 F. Supp. 3d at 175 (quoting *Second Amendment Found. v. U.S. Conf. of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001)). "In assessing whether this showing has been made, facts asserted by the plaintiff . . . [are] presumed to be true unless directly contradicted by affidavit," *AGS Int'l Servs. S.A. v. Newmont USA Ltd.*, 346 F. Supp. 2d 64, 81 (D.D.C. 2004)(quotations and citations omitted), but a Court "'may receive and weigh affidavits and other relevant matter to assist it in determining the jurisdictional facts,'" *Okolie*, 102 F. Supp. 3d at 175 (quoting *Buesgens v. Brown,* 567 F. Supp. 2d 26, 31 (D.D.C. 2008)).

The Court assumes, for the purposes of resolving personal jurisdiction only, that defendants were properly served.[4] However, "service of process does not alone establish personal jurisdiction." *Mwani v. bin Laden*, 417 F.3d 1, 8 (D.C. Cir.

---

[4] The Peruvian defendants all argue that they have not been properly served pursuant to Federal Rule of Civil Procedure 4(f). *See* Defs.' Mots., ECF Nos. 35, 36, 37, 38, 50, 52. Because the Court concludes that it lacks jurisdiction over the defendants regardless of whether they were properly served, it need not address this argument.

2005). "Before a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant." *Omni Capital Intern., Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987). There must also be "authorization for service of summons on the defendant," and a "constitutionally sufficient relationship between the defendant and the forum." *Id.* Thus, "[t]wo requirements must be met for a District of Columbia court to exercise personal jurisdiction over a defendant." *Bradley v. DeWine*, 55 F. Supp. 3d 31, 39 (D.D.C. 2014). "First, the defendant must qualify for either general or specific jurisdiction under the relevant . . . statutes." *Id.* "Second, the exercise of jurisdiction over the defendant must comply with the Due Process Clause . . . ." *Id.* at 39-40 (citations omitted).

Assessing whether a court may exercise personal jurisdiction over a defendant "typically implicates a state's jurisdictional statute or rule." *Alkanani v. Aegis Def. Servs., LLC*, 976 F. Supp. 2d 13, 21 (D.D.C. 2014) (quotations and alterations omitted). Therefore, this Court has personal jurisdiction over the defendants if a District of Columbia court could exercise personal jurisdiction over them. *See* Fed. R. Civ. P. 4(k)(1)(A); *see also Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)("Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons.").

However, the Court may also exercise personal jurisdiction if it is authorized by a federal statute or rule. *See, e.g.*, Fed. R. Civ. P. 4(k)(1)(C). Plaintiffs contend that the Court has jurisdiction over the defendants because it is authorized by the RICO statute, by Federal Rule of Civil Procedure 4(k)(2), and by the District of Columbia long arm statute. *See* Pls.' Opp'n, ECF No. 64 at 8-43. The Court will assess each offered basis for personal jurisdiction in turn.

### 1. Federal Rule of Civil Procedure 4(k)(2)

Plaintiffs' central argument is that the Court has personal jurisdiction pursuant to Federal Rule of Civil Procedure 4(k)(2). *See* Pls.' Opp'n, ECF No. 64 at 9-15. Rule 4(k)(2) provides jurisdiction for a claim under federal law when a defendant has been served and (1) "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction"; and (2) "exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2). Rule 4(k)(2) therefore "allows a district court to acquire jurisdiction over a foreign defendant which has insufficient contacts with any single state but has 'contacts with the United States as a whole.'" *In re Vitamins Antitrust Litigation*, 94 F. Supp. 2d 26, 31 (D.D.C. 2000)(quoting Advisory Comm. Note to 1993 Amendment).

Because SKE and Mr. Peck are subject to jurisdiction in other states, *see* Compl., ECF No. 1 ¶¶ 12 (Peck is domiciled in Colorado), 17 (SKE is domiciled in North Dakota), the Court may obtain jurisdiction pursuant to Rule 4(k)(2) only over the Peruvian defendants, *see* Fed. R. Civ. P. 4(k)(2)(A). As to the Peruvian defendants, plaintiffs have met the first three requirements of Rule 4(k)(2): (1) plaintiffs' claims include RICO claims, which arise under federal law, *see* 18 U.S.C. § 1962; (2) the Court assumes, but does not decide, that the defendants were properly served; and (3) the defendants are not subject to the jurisdiction of any single state court, *see generally* Defs.' Replies, ECF Nos. 75, 77, 79, 80, 81, 82 (not arguing that jurisdiction exists in another state); *Mwani*, 417 F.3d at 11 ("so long as a defendant does not concede to jurisdiction in another state, a court may use 4(k)(2) to confer jurisdiction") (citations and quotations omitted). Thus, jurisdiction depends on the final element of the analysis: whether the exercise of jurisdiction is "consistent with the Constitution." Fed. R. Civ. P. 4(k)(2)(B). This inquiry "turns on whether a defendant has sufficient contacts with the nation as a whole to satisfy due process." *Mwani*, 417 F.3d at 11.

The Court may exercise one of two types of personal jurisdiction: "general or all-purpose jurisdiction, and specific or case-linked jurisdiction." *Goodyear Dunlop Tires Operations,*

*S.A. v. Brown,* 564 U.S. 915, 919 (2011). The existence of general jurisdiction permits the Court to hear "any and all claims" brought against the defendant, while "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (quotations and citations omitted).

The Court first evaluates whether there is general jurisdiction over each of the Peruvian defendants pursuant to Federal Rule of Civil Procedure 4(k)(2). Concluding there is not, the Court analyzes whether there is specific jurisdiction over each with respect to the particular claims in this action.

**a. General Jurisdiction**

Plaintiffs do not explicitly argue that there is general jurisdiction over any defendant. *See generally* Pls.' Opp'n, ECF No. 64; Pls.' Mot. for Jurisdictional Discovery ("Mot. for Discovery"), ECF No. 63. However, in arguing that the Court has jurisdiction, plaintiffs point to the Peruvian defendants' general connections to the United States. *See generally id.* Because most of these alleged connections are unrelated to plaintiffs' claims—and the specific jurisdiction analysis focuses on the defendant's *suit-related* connections to the forum, *see Walden v. Fiore*, 571 U.S. 277, 284 (2014)—the Court will assume that plaintiffs argue that the Court has general jurisdiction over those defendants.

To establish general jurisdiction, plaintiffs must demonstrate that the Peruvian defendants' contacts with the United States are "so constant and pervasive as to render [them] essentially at home in" the United States. *Daimler,* 571 U.S. at 122 (citing *Goodyear*, 564 U.S. at 919). Plaintiffs have not done so. For example, plaintiffs do not allege that any of the Peruvian defendants are domiciled, incorporated, or have a principal place of business in the United States. *See id.* at 137 ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home. With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction.") (citations and quotations omitted). To the contrary, the complaint alleges that: (1) Mr. Farah is domiciled in Peru, *id.* ¶ 16; (2) Jorge, Sr. is domiciled in Peru, *id.* ¶ 20; (3) Jorge, Jr. is domiciled in Peru, *id.* ¶ 21; (4) Ofeila is domiciled in Peru, *id.* ¶ 22; (5) Javier is domiciled in Peru, *id.* ¶ 26; (6) Convalor is a "Peruvian compan[y]," *id.* ¶ 16; and (7) Confactor is also a "Peruvian company[y]," *id; see also* Defs.' Affs., ECF Nos. 35-1 (Javier), 36-1 (Jorge, Sr.), 37-1 (Jorge, Jr.), 38-1 (Ofelia), 52-1 (Farah and Convalor), 82-1 (Farah and

Convalor)(all swearing that they do not reside in the United States).

While not entirely clear, plaintiffs seem to argue that the Court may nonetheless exercise general jurisdiction over the Peruvian defendants due to their various connections with the United States. *See* Pls.' Opp'n, ECF No. 63 at 8-43. However, various connections to a jurisdiction that are not otherwise continuous and systematic cannot confer general jurisdiction. *See Daimler,* 571 U.S. at 137 ("only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction"). Indeed, a defendant's connections to the United States must render that defendant essentially *at home* in the United States such that "all-purpose" jurisdiction is warranted. *See Livnat v. Palestinian Auth.*, 82 F. Supp. 3d 19, 30 (D.D.C. 2015), *aff'd*, 851 F.3d 45 (D.C. Cir. 2017). For instance, in *Livnat v. Palestinian Authority*, Judge Kollar-Kotelly found that the Palestinian Authority was not "essentially at home" in the United States even though it allegedly had "many connections" to the country, including "the performance of fundraisers, community outreach, cultural events, and lectures, as well as certain governmental services, particularly consular services." *Id.* So here too. Assuming the Peruvian defendants' alleged various connections to the United States are true, plaintiffs cannot establish that they are

18

"essentially at home" in the United States solely on that basis. Indeed, the fact that the Peruvian defendants must travel to the United States and obtain visas suggests that they are *not* at home in the United States. *See id.* (finding that the many connections in fact suggested the defendant was not at home in the United States).

To illustrate, plaintiffs suggest that the Court has general jurisdiction over Jorge, Sr. because he is a partner in a Peruvian law firm that does "extensive work and advertises in the United States" and he has several clients located in the United States. Pls.' Opp'n, ECF No. 64 at 15-16. He is also allegedly a director of an airline that flies to several cities in the United States. *Id.* at 16; *see also* Cook Decl., ECF No. 64-1 at 15-16. Plaintiffs also suggest that the Court has jurisdiction over Jorge, Sr. because he is a lawyer and advisor to APS, which "did substantial business" with United States citizens: Mr. Peck and SKE. Pls.' Opp'n, ECF No. 64 at 17. However, the fact that Jorge, Sr. did business with United States citizens and is a "frequent business and personal traveler to the U.S." holding "multiple, re-entry B1/B2 visitor visa[s]," *id.* at 16, does not render him "essentially at home" in the United States such that the Court may exercise "all-purpose" jurisdiction over him, *Daimler,* 571 U.S. at 122; *see also Livnat*, 82 F. Supp. 3d at 30-31 (finding the defendants'

general affiliations with the United States were not so
continuous and systematic as to render it essentially at home).

Likewise, plaintiffs argue that the Court has jurisdiction
over Ofelia because she "visited the United States regularly, as
recently as September 2015, according to the Facebook page of
her daughter." Pls.' Opp'n, ECF No. 64 at 27; *see also* Cook
Decl., ECF no. 64-1 at 16. Plaintiffs similarly contend that the
Court has jurisdiction over Jorge, Jr. because "he has visited
the United States regularly," may have made visits to the
District of Columbia, and may have conducted business in the
United States. Pls.' Opp'n, ECF No. 64 at 29; *see also* Cook
Decl., ECF no. 64-1 at 15. Plaintiffs argue that the Court has
jurisdiction over Javier because he is also a partner of the
Peruvian law firm with American clients and is the director of
several companies that do business in the United States. Pls.'
Opp'n, ECF No. 64 at 30-31. Plaintiffs posit that it is likely
that Javier's work has "taken him repeatedly to the United
States." *Id.* at 31; *see also* Cook Decl., ECF No. 64-1 at 15.
Plaintiffs also contend that Javier has travelled "extensively"
in the United States for business, pleasure, and to "receive
medical treatments for a serious illness." Pls.' Opp'n, ECF No.
64 at 32. As with Jorge, Sr., assuming such allegations are
true, these limited connections and general affiliations do not
allow the Court to exercise general jurisdiction. *See Livnat*, 82

F. Supp. 3d at 30. The Court cannot find that traveling to the United States or doing business with United States' citizens renders these defendants "essentially at home" in the United States. *Daimler,* 571 U.S. at 122.

Plaintiffs offer similar, non-persuasive arguments for Mr. Farah. For example, they argue that he is a "principal" in a textile company that may advertise in the United States, Pls.' Opp'n, ECF No. 64 at 34; that he has "quite a few direct connections with the United States, including the fact that he has visited the District of Columbia several times," *id.* at 36; and that he has a daughter who attends college in the United States, *id.* at 36-37; *see* Cook Decl., ECF No. 64-1 at 3-4. These arguments fail for the same reason: limited connections to the United States do not render a foreign defendant essentially at home in the forum. *See Livnat*, 82 F. Supp. 3d at 30. However, plaintiffs also posit that Mr. Farah owns another home in the United States. *See* Pls.' Opp'n, ECF No. 64 at 37; Cook Decl., ECF No. 64-1 at 3. Ultimately, the Court need not determine whether such alleged homeownership renders Mr. Farah "at home" in the United States. First, if Mr. Farah *did* own a home in the United States, he would not fall within the reach of Federal Rule of Civil Procedure 4(k)(2)(A)(requiring that the defendant not be subject to jurisdiction in any state's court of general jurisdiction). Moreover, Mr. Farah denies owning a home in the

United States in his sworn declaration. *See* Farah Decl., ECF No. 82-1 ¶ 2 ("I do not own any interest in any real property, apartment, or condominium in the United States . . . . I mentioned to Mr. Cook once that I thought about purchasing an apartment for my daughter to live in while she attended college in the U.S., but I never made such a purchase."). In light of this sworn declaration, the Court may not exercise general jurisdiction based solely on plaintiffs' unsubstantiated speculation. *See NBC-Housing, Inc. Twenty-Six, v. Donovan*, 774 F. Supp. 2d 277, 293-94 (D.D.C. 2011)(refusing to accept plaintiff's speculation in light of the defendant's sworn declaration when determining whether to exercise personal jurisdiction). As for Convalor and Confactor, plaintiffs do not attempt to argue that the Peruvian companies have any connections to the United States separate from Mr. Farah. *See id.* at 33-38; *Rush v. Savchuk*, 444 U.S. 320, (1980)(holding that the test for personal jurisdiction must be met "as to each defendant").

Because none of the Peruvian defendants are essentially at home in the United States, the Court cannot exercise general jurisdiction over any of the Peruvian defendants pursuant to Federal Rule of Civil Procedure 4(k)(2).

### b. Specific Jurisdiction

Plaintiffs also suggest, without specifically arguing, that the Court has specific jurisdiction over the Peruvian defendants pursuant to Federal Rule of Civil Procedure 4(k)(2). *See* Pls.' Opp'n, ECF No. 64 at 8-43. In evaluating specific jurisdiction, "[t]he question is whether the . . . defendants have sufficient minimum contacts with the United States so as not to offend traditional notions of fair play and substantial justice as required under the Due Process Clause." *Oceanic Expl. Co. v. ConocoPhillips, Inc.*, No. CIV 04-332, 2006 WL 2711527, at *14 (D.D.C. Sept. 21, 2006)(citing *Burger King*, 471 U.S. at 474). As here, "[w]here a forum seeks to assert specific jurisdiction over [a foreign] defendant who has not consented to suit there, [the] fair warning requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum," and "the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King*, 471 U.S. at 472. The question, then, is whether the Peruvian defendants purposefully directed their activities at the United States, such that they could reasonably expect to be subject to litigation here, and whether the plaintiffs' injury arises out of that contact. *See Mwani*, 417 F.3d at 13 (finding the plaintiffs made a prima facie showing that the defendants "purposefully directed their activities at residents of the

23

United States" and that "this litigation results from injuries to the plaintiffs that arise out of or relate to those activities"; as such, defendants had a "fair warning that their activities would subject them to the jurisdiction of the United States")(quotations and citations omitted).

Plaintiffs contend that the defendants had "more than fair warning that the actions of APS and POIT would submit them to the jurisdiction of the U.S." *See* Pls.' Opp'n, ECF No. 64 at 12. Their argument is that the defendants all knew about the APS' "business plan" to recruit and defraud investors from the United States. *See id.* at 12-15. Thus, plaintiffs argue that, because the defendants knew about APS' actions, the defendants "solicit[ed] business relationships" with plaintiffs and other American victims to generate APS funding. *Id.* at 12-13. In so doing, plaintiffs claim that the defendants facilitated the RICO scheme. *Id.* at 14.

The Peruvian defendants all move to dismiss on similar grounds. They each argue that their alleged wrongdoing occurred in Peru and, as such, they did not direct any activity toward the United States. *See, e.g.*, Def.'s Mot., ECF No. 35 at 14-15. For example, the defendants point to the fact that that each are alleged to have "vouched" for Ignacio's honesty and APS' legitimacy while meeting with plaintiffs in Peru. *See id.* Moreover, the defendants contend that plaintiffs conflate APS'

24

and Ignacio's wrongdoing with their own, while their contact with the United States must be assessed separately. *See, e.g., id.* at 13-14, 16. Ultimately, defendants argue that asserting jurisdiction over them would violate due process because they did not direct *any* activity toward the forum or the United States. *See, e.g., id.* at 14-18. As such, it was not foreseeable that they could be hauled into court in the United States.

In order to establish specific jurisdiction, plaintiffs must show that each individual defendant purposefully directed his or her activities at the United States; the plaintiffs' injuries "must proximately result from actions by the defendant *himself* that create a substantial connection with the forum State." *Thompson Hine, LLP v. Taieb*, 734 F.3d 1187, 1190 (D.C. Cir. 2013)(quoting *Burger King*, 471 U.S. at 475)(emphasis in original); *see Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 ("Each defendant's contacts with the forum . . . must be assessed individually."). Plaintiffs first argue that the defendants had "fair warning" that they could be subject to specific jurisdiction in the United States because they knew that: (1) APS and POIT sought to solicit American investors; (2) APS and POIT intended to do business in the United States, and; (3) APS and POIT shipped products to the United States. *See* Pls.' Opp'n, ECF No. 64 at 12-14. This argument is unavailing. Plaintiffs do not allege that any of the defendants *themselves*

25

shipped products to the United States, solicited American investors, or sought entry to American markets. *See generally id.;* Compl., ECF No. 1. Indeed, the thrust of their argument is that the nine defendants are subject to the jurisdiction of this Court based on other defendants' actions. *See* Pls.' Opp'n, ECF No. 64 at 12 (arguing that defendants had "fair warning that *the actions of APS and POIT* would submit them to the jurisdiction of the U.S")(emphasis added); *see also* Compl., ECF No. 1 ¶¶ 45, 47, 65, 124 (alleging, among other injurious conduct, that APS and Ignacio, and not the other defendants, entered into contracts with plaintiffs). The Court cannot assert personal jurisdiction over the nine defendants based on APS' or Ignacio's alleged connection to the United States, as due process protects individuals from being subject to binding judgments in forums where the individual has no meaningful connection. *See Burger King*, 471 U.S. at 471-72.

Plaintiffs also argue that certain defendants had sufficient contact with the United States because they were officers or employees of APS when it did "substantial business" with SKE and Mr. Peck, both American citizens. *See* Pls.' Opp'n, ECF No. 64 at 17 (Jorge, Sr.), 29 (Jorge, Jr.). This argument is similarly unavailing. Again, the Court cannot assert jurisdiction over individual defendants based on another defendant's actions. *See Burger King*, 471 U.S. at 475. Even if

some of the Peruvian defendants were officers of APS or POIT, and even if the Court indeed has jurisdiction over APS and POIT,[5] a court cannot assert jurisdiction over a corporation's officers or employees by mere virtue of its jurisdiction over the corporation. *See Mouzon v. Radiancy, Inc.*, 85 F. Supp. 3d 361, 371 (D.D.C. 2015)(stating that the defendant's contacts with the forum "must be assessed based on his actions—separately from the corporation's contacts with the forum"). Plaintiffs have not argued that any Peruvian defendant is "more than an employee," warranting exception to the fiduciary shield doctrine. *Id.* at 371-72 ("Under the fiduciary shield doctrine, personal jurisdiction over a corporate officer may not be asserted based on contacts with the forum that are exclusively in relation to the defendant's corporate responsibility.")(citations and quotations omitted); *see generally* Pls.' Opp'n, ECF No. 64. Thus, the Court may not exercise jurisdiction over the individual Peruvian defendants based only on APS' or POIT's actions.[6]

---

[5] APS and POIT have not entered an appearance in this case. Thus, the Court need not address whether jurisdiction may be exercised over them.

[6] For the same reason, plaintiffs' attempted "stream of commerce" argument fails. Plaintiffs only allege that APS and POIT caused agricultural products to be shipped into the United States. Pls.' Opp'n, ECF No. 64 at 14. They do not allege that the Peruvian defendants themselves shipped agricultural products into the United States. *See id.*

Similarly, plaintiffs do not allege that the Peruvian defendants themselves solicited plaintiffs or any other United States citizens. Instead, plaintiffs allege that it was Ignacio and APS who solicited their business. *See, e.g.*, Compl., ECF No. 1 ¶¶ 45, 47, 65, 124. Plaintiffs claim that the Peruvian defendants merely "vouched" for APS and Ignacio when meeting with plaintiffs in Peru. *See* Pls.' Opp'n, ECF No. 64 at 24 (Jorge, Sr.), 32 (Javier), 35 (Farah), 36 (Farah acting on behalf of Convalor). In vouching for the company, plaintiffs allege that the Peruvian defendants did not disclose that they lost money investing in APS or that Ignacio was committing fraud. *See id.* at 24; *see also* Compl., ECF No. 1 ¶¶ 88-90, 106, 158. Plaintiffs do not allege that the Peruvian defendants themselves *sought* investors in the United States. *See generally id.* Accordingly, plaintiffs' reliance on *Citadel Investment Group, LLC v. Citadel Capital Co.* is unavailing. Pls.' Opp'n, ECF No. 64 at 13 (discussing 699 F. Supp. 2d 303 (D.D.C. 2010) for the proposition that a court may have jurisdiction over a foreign defendant when the foreign defendant solicits business relationships with residents of the United States). In that case, the court found that it had jurisdiction over the defendant because it had admittedly "actively solicit[ed] wealthy investors in the United States" and in doing so, "purposefully sought meaningful contacts, ties, or relations

with the United States by seeking investors in the United States." *Citadel*, 699 F. Supp. 2d at 315. Not so here. Unlike the *Citadel* defendants, the Peruvian defendants here lacked "fair warning that [their] activities would subject [them] to the jurisdiction of the United States" because they did not purposefully seek business relationships with investors in the United States. *Id.* (quoting *Mwani*, 417 F.3d at 13)(alterations omitted).

Nevertheless, plaintiffs suggest that "vouching" for APS and Ignacio, or in Mr. Farah's case, "introducing" plaintiffs to Ignacio and APS, constitutes purposefully directing activities at the United States. *See* Pls.' Opp'n, ECF No. 64 at 8-43. As discussed, the Peruvian defendants all allegedly vouched for Ignacio and APS while meeting with plaintiffs in Peru. *See* Compl., ECF No. 1 ¶¶ 32, 103 (Farah), 106 (Jorge, Sr.); Pls.' Opp'n, ECF No. 64 at 24 (Jorge, Sr.), 32 (Javier), 35 (Farah), 36 (Farah acting on behalf of Convalor). Because all of the Peruvian defendants' allegedly injurious conduct occurred abroad, "jurisdiction is proper only if the defendant has 'purposefully directed' [his or her] activities towards the forum and if defendant's 'conduct and connection with the forum State are such that he should reasonably anticipate being [hauled] into court there.'" *Estate of Klieman v. Palestinian*

29

*Auth.,* 82 F. Supp. 3d 237, 246 (D.D.C. 2015) (quoting *Burger King Corp.,* 471 U.S. at 472, 474).

The fact that defendants "vouched" for APS and Ignacio in Peru does not create minimum contacts with the United States. Rather than directing their activities toward the United States, the Peruvian defendants are alleged to have directed their injurious activity toward plaintiffs, who happen to be United States citizens. *See, e.g.,* Compl., ECF No. 1 ¶¶ 32, 103 (Farah), 106 (Jorge, Sr.); Pls.' Opp'n, ECF No. 64 at 24 (Jorge, Sr.), 32 (Javier), 35 (Farah), 36 (Farah acting on behalf of Convalor). Such contact is insufficient. In *Walden v. Fiore*, the Supreme Court held that a defendant's actions outside the forum did not create sufficient contacts with the forum simply because the defendant directed his conduct at residents of the forum. *Walden v. Fiore,* 571 U.S. 277, 285-86, 288-89 (2014)("Such reasoning improperly attributes a plaintiff's forum connections to the defendant and makes those connections 'decisive' in the jurisdictional analysis."). The Court must "look[] to the defendant's contacts with the forum . . . itself, not the defendant's contacts with persons who reside there." *Id.* at 285; *see also id.* ("But the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection . . . ."). Plaintiffs have simply not alleged that the Peruvian defendants'

30

course of conduct occurred in or was directed at the United States and that such conduct caused plaintiffs' injuries. *See generally* Compl., ECF No. 1; Pls.' Opp'n, ECF No. 64; *see Walden*, 571 U.S. at 289 (concluding the "proper lens" for viewing jurisdictionally relevant contacts is "whether the *defendant's* actions connect him to the *forum*")(emphasis in original). As such, the Court cannot exercise jurisdiction.

Finally, any allegations about the defendants' general connections to the United States, as discussed previously *supra* Sec. III.A.1.a, cannot create specific jurisdiction because such connections to the United States are unrelated to plaintiffs' injuries. *See Walden*, 571 U.S. at 284 (clarifying that specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation . . . . to exercise jurisdiction consistent with due process, the defendant's *suit-related* conduct must create a substantial connection with the forum") (emphasis added). Indeed, none of the defendant's alleged connections to the United States is suit-related. *See* Pls.' Opp'n, ECF No. 64 at 8-43 (discussing the defendants' unrelated business ventures that involve American clients, leisure or health visits, and irrelevant family connections to the United States); Cook Decl., ECF No. 64-1 (same).

In sum, the Court cannot exercise personal jurisdiction over the Peruvian defendants pursuant to Federal Rule of Civil Procedure 4(k)(2).

**2. District of Columbia Long Arm Statutes**

Plaintiffs' complaint does not allege that the Court has jurisdiction under the District of Columbia long arm statute. Instead it alleges that personal jurisdiction is proper under RICO, 18 U.S.C. § 1965. Compl., ECF No. 1 ¶ 3. Nevertheless, plaintiffs suggest in their omnibus opposition memorandum that personal jurisdiction may exist pursuant to the District of Columbia long arm statute, D.C. Code § 13-423. *See generally* Pls.' Opp'n, ECF No. 64 at 8-43. Plaintiffs do not identify which provision(s) of the long arm statute are applicable. *See generally id.* (citing "D.C. Code § 13-423" without identifying a subsection); Pls.' Mot. for Discovery, ECF No. 63 (same). The Court is left to guess.

D.C. Code § 13-423 authorizes the exercise of specific jurisdiction under certain enumerated circumstances, including when an entity or individual (1) transacts any business in the District; (2) contracts to supply services in the District; (3) causes tortious injury in the District by an act or omission in the District; (4) causes tortious injury by an act outside the District if the entity or individual regularly does business in the District, engages in a persistent course of conduct in the

District, or derives substantial revenue from goods or services used, consumed, or rendered in the District; or (5) has an interest in, uses, or possesses real property in the District. D.C. Code § 13-423(a)(1)-(5)(omitting other plainly irrelevant subsections). If jurisdiction over a person or entity is based solely on the statute, only a claim for relief *arising from acts enumerated* in the statute may be asserted against the person or entity. *Id.* § 13-423(b). "While the long arm statute is interpreted broadly and factual disputes are to be resolved in favor of the plaintiff, plaintiff must allege some specific facts evidencing purposeful activity by the defendant in the District of Columbia by which it invoked the benefits and protections of the District's laws." *FC Inv. Grp. LC v. IFX Markets, Ltd.*, 479 F. Supp. 2d 30, 39 (D.D.C. 2007), *aff'd*, 529 F.3d 1087 (D.C. Cir. 2008)(quotations and citations omitted).

Subsections (a)(2),(3), and (5) are obviously inapplicable here, as plaintiffs have not alleged that any of the nine defendants supplied services in the District of Columbia, committed an act or omission in the District of Columbia, or has an interest in or possesses real property in the District of Columbia.[7] *See generally* Pls.' Opp'n, ECF No. 64; Cook Decl., ECF No. 64-1; Compl., ECF No. 1.

---

[7] While plaintiffs speculate that Mr. Farah owns property the United States, they do not state that he owns property in the

Subsection (a)(1) is also inapplicable because plaintiffs do not allege that the defendants transacted business in the District of Columbia. *See generally id.* Accepting plaintiffs' allegations as true, the Peruvian defendants' injurious conduct included "vouching" for APS and Ignacio in Peru, causing plaintiffs to invest in the company. *See* Compl., ECF No. 1 ¶¶ 32, 103, 106; Cook Decl., ECF No. 64-1 ¶¶ 41-43 (describing meetings in Peru). This activity occurred in Peru. *See id.* Because none of the operative events occurred in the District of Columbia, the Court cannot find that the Peruvian defendants were "transacting business in the District of Columbia." *See FC Inv. Grp. LC*, 479 F. Supp. 2d at 40-41 (finding that the defendants were not transacting business in the District of Columbia because London was the "locus" of the "overwhelming number of operative events").

As for SKE and Mr. Peck, plaintiffs seems to allege that they transacted business in the District of Columbia because they "entic[ed] buyers such as plaintiffs to enter into the fraudulent transactions with APS and SKE" by "providing APS numerous phony purchase orders for products that SKE had no

District of Columbia. *See* Pls.' Opp'n, ECF No. 64 at 37. More importantly, Mr. Farah's sworn declaration establishes that he does not. *See* Farah Decl., ECF No. 82-1 ¶ 2 ("I do not own any interest in any real property, apartment, or condominium in the United States").

intention of purchasing, but which Ignacio and APS would then use to induce victims . . . ." Pls.' Opp'n, ECF No. 64 at 41. This activity also occurred in Peru. *See* Compl., ECF No. 1 ¶¶ 94, 99; *see id.* ¶ 76 ("Peck soon thereafter cooked up a scheme with Harten whereby Peck would issue facially valid purchase orders . . . and then [Ignacio] would shop them around to financing sources in Lima and abroad. At one point, [Ignacio] and Peck had 6 purported SKE purchase orders hanging on a board in the APS office in Lima, visible on entry to the office by . . . plaintiffs."); *see also* Cook Decl., ECF No. 64-1 ¶¶ 49-53, 57. Moreover, to the extent plaintiffs argue that the Court has jurisdiction over SKE and Mr. Peck because they too "vouched" for APS and Ignacio, such conduct also occurred in Peru. *See id.* ¶¶ 88-91 ("NDL first met Peck at a lunch organized by [Ignacio] in Lima, Peru [at which he vouched for APS and Ignacio]"); *see also* Cook Decl., ECF No. 64-1 ¶ 49 (describing meeting with Peck in Peru). The fact that the defendants' actions *in Peru* induced plaintiffs, who happened to be District of Columbia citizens, cannot confer jurisdiction, as the defendants did not direct any conduct at the forum. *See Walden,* 571 U.S. at 285 ("But the plaintiffs cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection . . . ."); *see also Novak-Canzeri v. Al Saud,* 864 F. Supp. 203, 206 (D.D.C. 1994)("The claim itself must

have arisen from the business transacted in the District of
Columbia or there is no jurisdiction.").

D.C. Code § 13-423 subsection (a)(4) is also inapplicable.
Pursuant to that subsection, the Court may exercise personal
jurisdiction even if the injurious conduct occurred outside the
District of Columbia. However, to invoke the subsection, the
defendant must regularly do business in the District, engage in
a persistent course of conduct in the District, or derive
substantial revenue from goods consumed or services rendered in
the District. D.C. Code § 13-423(a)(4). Plaintiffs have not
alleged any facts to suggest that any of the defendants meet
these requirements. *See generally* Compl., ECF No. 1; Pls.'
Opp'n, ECF No. 64; Cook Decl., ECF No. 64-1. Despite reading the
lengthy briefing and complaint closely, the Court is unable to
identify *any* activity or conduct that occurred in the District
involving the nine defendants,[8] beyond receiving a few emails or
phone calls, such that the Court could assume the defendants
regularly do business or engage in a persistent course of

---

[8] Plaintiffs allege that there was a single meeting that occurred
in the District of Columbia between Ignacio, his wife, and
plaintiffs. *See* Compl., ECF No. 1 ¶ 33. As previously discussed,
the Court cannot exercise personal jurisdiction over the nine
defendants based on another defendant's meeting. *See Walden*, 571
U.S. at 284 ("[T]he relationship [between the forum and the
defendant] must arise out of the contacts that the defendant
himself creates with the forum State.")(quotations and citations
omitted).

conduct in the District. *See* Compl., ECF No. ¶¶ 60 (receiving a telephone call from Mr. Peck), 178-181 (receiving emails from APS and Ignacio); Cook Decl., ECF No. 64-1 ¶¶ 45(receiving an email on which Jorge, Sr. was copied), 57 (receiving a telephone call from Mr. Peck). Sending emails or making phone calls to District residents does not constitute conducting "regular business" or engaging in a "persistent course of conduct" in the District of Columbia. *See Naegele v. Albers*, 110 F. Supp. 3d 126, 153 (D.D.C. 2015)(finding that making calls and sending emails to plaintiffs located in the District of Columbia "do not, standing alone, constitute a persistent course of conduct" pursuant to the long arm statute)(citing *FC Inv. Grp.*, 529 F.3d at 1095 n. 9 (finding that even regular calls from the London defendant to the District were insufficient to establish long arm jurisdiction under sections (a)(1) and (a)(4)); *Houlahan v. Brown*, 979 F. Supp. 2d 86, 89-90 (D.D.C. 2013)(concluding that an email sent to a resident in the District of Columbia does not constitute a persistent course of conduct in the District of Columbia)); *see also Tavoulareas v. Comnas*, 720 F.2d 192, 194 (D.C. Cir. 1983) (finding making calls to the District does not constitute acts "in the District" as pursuant to subsection (a)(4)). Moreover, plaintiffs do not allege that any of the nine defendants derived substantial revenue from goods consumed or

services rendered in the District. *See generally* Compl., ECF No. 1; Pls.' Opp'n, ECF No. 64; Cook Decl., ECF No. 64-1.

Finally, while not invoking a particular statute, plaintiffs seem to argue that the Court has general jurisdiction over SKE based on its potential "continuous and systemic" contact with the District of Columbia market. Pls.' Opp'n, ECF No. 64 at 39. Plaintiffs contend that SKE advertises to District of Columbia residents via its website. They argue that its agricultural products "quite likely end up, after travelling through the flow of commerce, in the District of Columbia." *Id.* "D.C. Code § 13-334(a) permits courts to exercise general jurisdiction over a foreign corporation as to claims not arising from the corporation's conduct in the District if the corporation is doing business in the District." *FC Inv. Grp.*, 529 F.3d at 1901 (quotations and alterations omitted). "Under the Due Process Clause, such general jurisdiction over a foreign corporation is only permissible if the defendant's business contacts with the forum are 'continuous and systematic.'" *Id.* at 1091-92 (quoting *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 510 (D.C. Cir. 2002)).

Plaintiffs seem to suggest that SKE's contact with the District of Columbia is continuous and systematic because it maintains a website that District of Columbia residents are able to access and its products may likely end up in the District of

38

Columbia. Pls.' Opp'n, ECF No. 64 at 39-43. "Under certain circumstances, a foreign corporation's maintenance of a website that is accessible in the District can satisfy general jurisdiction requirements." *FC Inv. Grp.*, 529 F.3d at 1092 (citations omitted). However, the "mere accessibility" of a website cannot establish general jurisdiction. *Id.* Instead, the website must be (1) "interactive" and (2) District of Columbia residents "must use the website in a continuous and systematic way." *Id.* (quotations and citations omitted); *see also Atlantigas Corp. v. Nisource, Inc.,* 290 F. Supp. 2d 34, 52 (D.D.C. 2003) ("[T]he question is not whether District of Columbia residents 'can' transact business in the District with the non-resident defendant through the defendant's website, but if they actually 'do' engage in sustained business activities in a continuous and systematic way.")(citing *Gorman*, 293 F.3d at 512-13). Plaintiffs have not alleged any facts to suggest that District of Columbia residents use SKE's website in a continuous and systematic way. *See generally* Pls.' Opp'n, ECF No. 64 at 39-43. Indeed, plaintiffs essentially allege that SKE has a website that is generally accessible to District of Columbia residents, and nothing more. *See GTE New Media Services Inc. v. BellSouth Corp.,* 199 F.3d 1343, 1349 (D.C. Cir. 2000) ("[P]ersonal jurisdiction surely cannot be based solely on the ability of District residents to access defendants' websites, for this does

not by itself show any persistent course of conduct by the defendants in the District.").

Moreover, the fact that SKE products could eventually end up in the District of Columbia does not confer general jurisdiction. Assuming plaintiffs are invoking a "stream of commerce" argument, "the Supreme Court has made clear that 'the placement of a product into the stream of commerce ... do[es] not warrant a determination that, based on those ties, the forum has *general* jurisdiction over a defendant.'" *Pinkett v. Dr. Leonard's Healthcare Corp.*, No. 18-cv-1656 (JEB), 2018 WL 5464793, at *3 (D.D.C. Oct. 29, 2018)(quoting *Daimler*, 571 U.S. at 132)(emphasis in original). Moreover, plaintiffs cannot rely on this steam of commerce argument to suggest that the Court has *specific* jurisdiction over SKE because plaintiffs' injuries do not arise from SKE's placement of agricultural products in the District of Columbia. *See Goodyear*, 564 U.S. at 919 ("specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.")(quotations and citations omitted).

As such, plaintiffs cannot exercise jurisdiction over any of the nine defendants pursuant to the District of Columbia long arm statutes.

### 3. RICO

Plaintiffs also argue that the Court has personal jurisdiction over the defendants pursuant to RICO. Compl., ECF No. 1 ¶ 3 (citing 18 U.S.C. § 1965(a) and (b)). The RICO statute "provides for nationwide personal jurisdiction over all domestic defendants to ensure that all co-conspirators can be brought before one judge in a single forum, regardless of the defendants' contact with the forum state." *Oceanic Expl. Co*, 2006 WL 2711527, at *12 (citing 18 U.S.C. § 1965). Indeed, "as long as one defendant is subject to service in [the forum], additional parties residing in other districts may be brought before the forum court" when the "ends of justice require." *Id.* (citing 18 U.S.C. § 1965(b)).

The RICO statute, however, cannot be used to obtain personal jurisdiction over the Peruvian defendants because it only provides for *nationwide* service of process. *See AGS Int'l Servs. S.A. v. Newmont USA Ltd.*, 346 F. Supp. 2d 64, 86 (D.D.C. 2004)("Sodexho Alliance and Sodexho Peru also are not subject to personal jurisdiction here because they were served abroad and therefore were not served properly under the RICO statute."). Plaintiffs have not alleged that the Peruvian defendants were served in the United States. *See, e.g.*, Compl., ECF No. 1; Pls.' Opp'n, ECF No. 64; Cook Decl., ECF No. 64-1.

Additionally, the Court cannot exercise personal jurisdiction over the United States' defendants, SKE and Mr. Peck, because it does not have jurisdiction over any other defendant. "[F]or nationwide service to be imposed under section 1965(b), the court must have personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy and the plaintiff must show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators." *FC Inv. Grp*, 529 F.3d at 1099-1100 (quotations and citations omitted). Plaintiffs have not established that the Court has personal jurisdiction over any other defendant and thus, it cannot exercise RICO jurisdiction over SKE and Mr. Peck.

In sum, the Court agrees that this case is essentially a dispute about activities that took place almost entirely in Peru. As such, plaintiffs have not established a basis for this Court to exercise personal jurisdiction over any of the nine defendants.

**B. Jurisdictional Discovery**

Finally, plaintiffs seek jurisdictional discovery "in order to contest and test the allegations made by defendants that there is [sic] insufficient jurisdictional ties." Pls.' Mot. for Discovery, ECF No. 63 at 2. Plaintiffs contend that jurisdictional discovery is warranted because the record is

inadequate as to the defendants' contacts with the District of
Columbia. *Id.* at 5. In support, plaintiffs reiterate verbatim
the same arguments already rejected regarding the defendants'
contacts with the United States and the District of Columbia.
*See id.* at 5-27. Plaintiffs seek "focused jurisdictional
discovery in the form of interrogatories, requests for
production, requests for admissions, and possibly []
deposition[s]" to establish "sufficient contacts with the United
States, and possibly with the District of Columbia." *See id.* at
9 (Jorge, Sr.), 11-12 (Ofelia), 14 (Jorge, Jr.), 17 (Javier), 21
(Mr. Farah and Convalor), 22 (Confactor). Plaintiffs seek the
same information to establish the American defendants'
connections to the District of Columbia. *See id.* at 27 (SKE and
Mr. Peck).

The defendants all submit similar arguments in response.
Defs.' Discovery Opp'ns, ECF Nos. 68, 69, 70, 71, 85 (Harten
family). The defendants argue that plaintiffs have not
demonstrated that discovery can supplement their jurisdictional
allegations because their request is based on mere conjecture.
*See, e.g.*, ECF No. 68 at 4. As such, defendants contend that it
is inappropriate to subject them to the burden and expense that
accompanies jurisdictional discovery, especially the broad
discovery requested. *See, e.g.*, *id.* at 4-5. Defendants also
argue that plaintiffs have not identified the specific

information they hope to discover and how they propose to discover it. *See, e.g.*, ECF No. 69 at 1-3.

"It is well established that the 'district court has broad discretion in its resolution of discovery problems.'" *FC Inv. Grp.*, 529 F.3d at 1093 (quoting *Naartex Consulting Corp. v. Watt,* 722 F.2d 779, 788 (D.C. Cir. 1983)). As such, "[w]hether to permit jurisdictional discovery rests in the discretion of the district court." *In re Papst Licensing GMBH & Co. KG Litig.*, 590 F. Supp. 2d 94, 101 (D.D.C. 2008)(citations omitted). "In order to engage in jurisdictional discovery, the plaintiff must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant." *FC Inv. Grp.*, 529 F.3d at 1093-94 (quotations and citations omitted). Although discovery should be "granted freely, it can be denied when the plaintiff has failed to present facts that could establish jurisdiction." *Williams v. ROMARM*, 187 F. Supp. 3d 63, 72 (D.D.C. 2013), *aff'd sub nom.*, 756 F.3d 777 (D.C. Cir. 2014)(citing *Caribbean Broad. Sys. Ltd. v. Cable & Wireless, PLC*, 148 F.3d 1080, 1089-90 (D.C. Cir. 1998)(affirming district court's denial of discovery motion because plaintiffs did not present sufficient evidence of jurisdiction); *Savage v. Bioport, Inc.*, 460 F. Supp. 2d 55, 62-63 (D.D.C. 2006)(denying jurisdictional discovery motion because the plaintiff did not allege contacts sufficient to establish

general or specific jurisdiction)). Moreover, "a request for
jurisdictional discovery cannot be based on mere conjecture or
speculation." *FC Inv. Grp.*, 529 F.3d at 1094 (citing *Bastin v.
Fed. Nat'l Mortgage Ass'n,* 104 F.3d 1392, 1396 (D.C. Cir.
1997)). A plaintiff may not use jurisdictional discovery to
"conduct a fishing expedition in the hopes of discovering some
basis of jurisdiction." *In re Papst*, 590 F. Supp. 2d at 101
(quotations and citations omitted). To that end, "a plaintiff
must make a detailed showing of what discovery it wishes to
conduct or what results it thinks such discovery would produce."
*Williams*, 187 F. Supp. 3d at 72 (quotations and citations
omitted).

Here, plaintiffs have not demonstrated that they can
"supplement [their] jurisdictional allegations through
discovery," *Shaheen v. Smith*, 994 F. Supp. 2d 77, 89 (D.D.C.
2013), because they offer "no specifics of any facts that could
establish jurisdiction," *App Dynamic ehf v. Vignisson*, 87 F.
Supp. 3d 322, 330 (D.D.C. 2015). For example, plaintiffs' motion
for discovery merely repeats the arguments they raised in
opposition to the motions to dismiss; those arguments have been
rejected. *See generally* Pls.' Mot. for Discovery, ECF No. 63.

Plaintiffs cannot and do not point to any additional facts
that could be discovered and would establish personal
jurisdiction over any of the nine defendants. *See App Dynamic*

45

*ehf*, 87 F. Supp. 3d at 330 (denying request for jurisdictional discovery because plaintiff "offers no specifics of any facts that could establish jurisdiction"); *Gorman,* 293 F.3d at 513 (noting jurisdictional discovery should have been granted because plaintiff demonstrated it *could* "supplement its jurisdictional allegations through discovery").

First, plaintiffs do not establish that there are any additional facts that could establish general jurisdiction over any defendant. *See generally* Pls.' Mot. for Discovery, ECF No. 63. Any further information about the Peruvian defendants' alleged general connections to the United States—such as personal and business travel to the United States, work for companies that do business in the United States, or family members located in the United States—would not warrant exercising general jurisdiction pursuant to Federal Rule of Civil Procedure 4(k)(2) as the Peruvian defendants are not essentially "at home" in the United States. *See Livnat v. Palestinian Auth.*, 82 F. Supp. 3d 19, 30 (D.D.C. 2015), *aff'd*, 851 F.3d 45 (D.C. Cir. 2017). For the American defendants, Mr. Peck is domiciled in Colorado and SKE is headquartered and incorporated in North Dakota. Compl., ECF No. 1 ¶¶ 12 (Peck), 17 (SKE). They are not at home in this forum.

Second, plaintiffs have not established that discovery could lead to specific jurisdiction over the defendants.

46

Plaintiffs contend that discovery will reveal the extent to which the defendants had connections to either the forum (American defendants) or the United States (Peruvian defendants). However, as with their opposition memorandum, most of the facts alleged in plaintiffs' motion for jurisdictional discovery attempts to establish the defendants' connections to the alleged RICO scheme, *not* the defendants' connections to the forum or to the United States. *See generally* Pls.' Mot. for Discovery, ECF No. 63. Moreover, as extensively discussed, practically all of the allegedly injurious conduct occurred in Peru. *See supra* Secs. III.A.1,2. Plaintiffs have not identified any basis to believe that there are additional facts that could reveal that the nine defendants purposefully directed their activities to either the United States (Peruvian defendants) or the District of Columbia (SKE and Mr. Peck). *See generally* Pls.' Mot. for Discovery, ECF No. 63; *see App Dynamic ehf*, 87 F. Supp. 3d at 330 (denying request for jurisdictional discovery because plaintiff "offers no specifics of any facts that could establish jurisdiction").

Moreover, plaintiffs do not assert how they can supplement their allegations through discovery or what information they seek to uncover. They assert only that discovery will "likely establish sufficient contacts with the United States, and possibly with the District of Columbia, to justify personal

jurisdiction" over each defendant. *See* Pls.' Mot. for Discovery, ECF No. 63 at 9, 11-12, 14, 17, 22; *see also id.* at 27 (arguing that discovery will "conclusively establish sufficient contacts with the District of Columbia, to justify personal jurisdiction over SKE and Peck"). Plaintiffs do not make a "detailed showing of what discovery it wishes to conduct," as they must. *Atlantigas Corp.*, 290 F. Supp. 2d at 53 (quotations and citations omitted). Instead, they offer a vague and general list of the *type* of discovery sought. Plaintiffs summarily request "focused jurisdictional discovery in the form of interrogatories, requests for production, requests for admissions, and possibly a deposition." *See, e.g.*, Pls.' Mot. for Discovery, ECF No. 63 at 9. Plaintiffs repeat this broad and vague request verbatim for all nine defendants. *See id.* at 9, 11-12, 14, 17, 22, 27. Such "generalized" requests and "predictions are not enough to justify jurisdictional discovery." *Atlantigas Corp.*, 290 F. Supp. 2d at 53. Because plaintiffs have not specified the targeted information sought or established that jurisdictional discovery will help them "discover anything new, it is inappropriate to subject defendants to the burden and expense of discovery." *Id.* (quotations, citations, and alterations omitted); *compare with GTE New Media*, 199 F.3d at 1349-51 (allowing jurisdictional discovery, even though the record was "plainly inadequate" and

there was "absolutely no merit" to plaintiff's claim of jurisdiction because the plaintiffs cited the specific information and facts they would target to establish jurisdiction).

## IV. Conclusion

For the foregoing reasons, the Court concludes that it lacks personal jurisdiction over the nine defendants who moved to dismiss. The Court therefore **GRANTS** the nine defendants' eight motions to dismiss. *See* ECF Nos. 35, 36, 37, 38, 45, 50, 52, 54. Defendants Mr. Peck; SKE; Mr. Farah; Convalor; Confactor; Jorge, Sr.; Jorge, Jr.; Ofelia; and Javier are **DISMISSED** from this action. The Court further **DENIES** plaintiffs' motion for jurisdictional discovery. *See* ECF No. 63. Because the Court finds that it lacks personal jurisdiction over the defendants, it need not resolve plaintiffs' motions for orders allowing alternative service, *see* ECF Nos. 62 and 89, and SKE's motion to strike certain declarations and exhibits, *see* ECF No. 76. Those motions are therefore **DENIED AS MOOT**. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

Signed:    **Emmet G. Sullivan**
           **United States District Judge**
           **January 2, 2019**